UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 2:19-cr-30-FtM-38NPM

EDGAR VAZQUEZ

## **ORDER**[1]

Before the Court is Defendant Edgar Vazquez's Motion to Suppress Evidence Discovered Pursuant to a Defective Warrant (Doc. 42), and the Government's opposition (Doc. 48). The Court held oral argument on September 23, 2019, at which Vazquez was present and represented by counsel. (Doc. 51). The Court took the motion under advisement. For the following reasons, the Court denies Vazquez's motion.

## **BACKGROUND**

Based on the parties' filings and the record, the Court makes these findings of fact material to Vazquez's motion:

On September 13, 2018, Detective Gabriel Rose of the Lee County Sheriff's Office ("LCSO") was surveilling Vazquez as part of a drug investigation. Detective Rose saw Vazquez leave his home in the morning and drive away alone. Soon thereafter, another detective stopped Vazquez for a traffic infraction. During the stop, a canine officer alerted

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink stops working or directs the user to some other site does not affect the opinion of the Court.

to drugs inside Vazquez's car. Officers searched it and found about 520 grams of cocaine in a vacuum-sealed bag under the driver's seat.

Later that same morning, Detective Rose submitted an affidavit in support of a search warrant for Vazquez's home. (Doc. 48-1). He believed Vazquez to have trafficked over 400 grams of cocaine in violation of Florida law and to have evidence of the crime in his house. (Doc. 48-1 at 1). Detective Rose's affidavit is the subject of Vazquez's motion and thus warrants more discussion.

The affidavit says that Detective Rose had been working for LCSO's Narcotics Unit for four years, was "involved in a large amount of narcotics investigations," and attended training courses on drug trafficking. (Doc. 48-1 at 3). As part of the Narcotics Unit, Detective Rose began surveilling Vazquez as a possible drug trafficker. From there, the affidavit detailed an incident early in the surveillance.

On May 1, 2018, Detective Rose and colleagues saw Vazquez drive alone from his home. They followed Vazquez to a Home Depot parking lot where he briefly met another car. After the cars separated, Detectives quickly stopped the other car and found an ounce of cocaine inside. LCSO detectives then continued to watch Vazquez from May until September. They saw Vazquez "on numerous occasions meet[ ] up with known drug traffickers." (Doc. 48-1 at 3). The affidavit also detailed the traffic stop that prompted the application to search Vazquez's home. Based on these collective facts, a state court judge signed the search warrant. (Doc. 48-2).

When LSCO executed the warrant, officers seized more than one-half kilogram of cocaine, a loaded handgun, a vacuum sealer, a money counter, and $1,000 cash.

Vazquez now faces a three-count indictment for possessing cocaine with the intent to distribute and possessing a firearm to further a drug trafficking crime. (Doc. 21).

Vazquez moves to suppress the evidence found in his home. (Doc. 42). He argues Detective Rose's affidavit lacked probable cause to reasonably suspect evidence of drug trafficking in his house. He also argues that no law enforcement officer could reasonably rely on Detective Rose's affidavit when it was so lacking in probable cause.

## DISCUSSION

"Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quotations omitted). "A search warrant affidavit need not allege that unlawful activity occurred at the place to be searched; the affidavit need only establish a nexus between the place and the criminal activity." *United States v. McCown*, 762 F. App'x 732, 734 (11th Cir. 2019) (citations omitted). A "nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (quotations omitted). What is more, "[e]vidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at their residence will support such a search." *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008); *see also Kapordelis*, 569 F.3d at 1310 ("Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" (citation omitted)).

Courts must read affidavits for search warrants "in a common sense fashion" and give "great deference" to the issuing judge's finding on probable cause. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quotation and alteration omitted); *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (stating courts "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers").

Here, Detective Rose's affidavit provided enough nexus between the drugs in Vazquez's car and his home to establish a fair probability that contraband or evidence of drug trafficking would be found in Vazquez's house. Vazquez, a suspected drug trafficker, was found in possession of a substantial and distributable amount of cocaine shortly after leaving his home. This is not a case in which LCSO detectives randomly spotted Vazquez driving around Fort Myers and then pulled him over. Rather, they saw him leave his home and then get pulled over with a distributable amount of cocaine in his car. And the affidavit details Detective Rose seeing Vazquez exit his home, get into his car, and drive away. Before Vazquez reached any destination, a LCSO detective stopped him for a traffic violation. The stop resulted in detectives finding 520 grams of vacuum-sealed cocaine—worth thousands of dollars—under Vazquez's driver seat. *See United States v. Strong*, No. 8:17-cr-480-T-36JSS, 2018 WL 1327092, at *5-6 (M.D. Fla. Mar. 15, 2018) (stating whether the officer saw the defendant "carrying narcotics or whether the cocaine and marijuana found in the vehicle actually even came from the residence is not conclusive because the nexus requirement does not necessitate direct observation or

even an allegation that the illegal activity occurred at the residence"). These facts are a sufficient nexus for the state judge to find a fair probability that Vazquez was keeping evidence of his drug business at home.

But the affidavit had more information to establish a connection between Vazquez's home and criminal activity. The September 18 stop was coupled with Detective Rose's credentials and experience as a narcotics officer, his five-month surveillance of Vazquez, Vazquez being seen with known drug traffickers, and the suspected drug buy at Home Depot. Common sense dictates that Vazquez would stash more drugs, paraphernalia, and other items related to drug trafficking at his home. Detective Rose did not rely solely on Vazquez's status as a suspected drug dealer to support the search warrant. The state court judge had all these facts to reasonably conclude that Vazquez kept lucrative quantities of his drug business in his most private place—his home. *See Jenkins*, 901 F.2d at 1081 (finding sufficient probable cause to search the defendant's home based on the facts that the defendant committed theft, "the contraband stolen was composed of items which are capable of being hidden in a residence, and the statement of an agent who had ten years' experience investigating bank robberies").

Even if the affidavit lacked probable cause, the good faith exception to the exclusionary rule applies. In *United States v. Leon*, the Supreme Court held that trial courts should not suppress evidence obtained by police officers in reasonable reliance on search warrants that ultimately lack probable cause. 468 U.S. 897, 922 (1984). Under this exception, a court should suppress evidence "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable

belief in the existence of probable cause." *Leon*, 468 U.S. at 912. Here, Vazquez does not argue that Detective Rose acted dishonestly or recklessly in preparing his affidavit. He only argues that the lack of nexus meant officers could not have reasonably relied on the search warrant. But the Court already found a sufficient nexus between Vazquez's home and drug activity. The Court thus denies Vazquez's motion to suppress.

Accordingly, it is now

**ORDERED:**

Defendant Edgar Vazquez's Motion to Suppress Evidence Discovered Pursuant to a Defective Warrant (Doc. 42) is **DENIED.**

**DONE AND ORDERED** in Fort Myers, Florida on this 4th day of October 2019.

*[Signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record